WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Benjamin Reimer,<br><br>            Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-13-08225-PCT-GMS<br><br>**ORDER** |

      Pending before the Court is the appeal of Plaintiff David Benjamin Reimer, which challenges the Social Security Administration's decision to deny benefits. (Doc. 24.) For the reasons set forth below, the Court affirms that determination.

**BACKGROUND**

      In January 2012, David Benjamin Reimer filed a Title II application for benefits with the Social Security Administration ("SSA") alleging a disability onset date of August 20, 2010. (R. at 11.) Reimer's application was denied both initially and upon reconsideration. (*Id.*) An Administrative Law Judge ("ALJ") held a hearing and heard testimony in April 2013. (*Id.*) In evaluation whether Reimer was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 11–24.)

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:
> A claimant must be found disabled if she proves: (1) that she
> is not presently engaged in a substantial gainful activity[,] (2)

1    The SSA had already denied a previous application by Reimer in 2009, alleging an onset date in October 2007. (R. at 11.) The ALJ determined that the finding of non-disability for that previous period was final. (*Id.*) However, the ALJ held that Reimer rebutted the presumption of continuing non-disability by establishing changed circumstances. (*Id.*)

At step one, the ALJ found that Reimer did not engage in substantial gainful activity from the alleged onset date through that date that he last met the insured status requirement on March 31, 2012. (R. at 13–14.) At step two, the ALJ determined that Reimer had the following severe impairments: generalized anxiety disorder, possible major depressive disorder, borderline intellectual functioning, expressive language disorder, and mild-moderate obesity. (R. at 14.) At step three, the ALJ determine that none of these impairments, either alone or in combination, met or equaled any of the SSA's listed impairments. (R. at 14–16.)

At that point, the ALJ made a determination of Reimer's residual functional capacity ("RFC"),[2] concluding that he could perform medium work with various

---

> that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

- 2 -

limitations. (R. at 16–21.) At step four, the ALJ determined that Remier could not perform his past relevant work. (R. at 21–22.) At step five, the ALJ considered Reimer's age, education, and transferability of skills. (R. at 22.) The ALJ determined that there were a significant number of jobs in the national economy that Reimer could perform with his RFC. (R. at 22–23.)

Based on these determinations, the ALJ found that Reimer was not disabled and denied his application. (R. at 23.) The Appeals Council declined to review the decision. (R. at 1–3.) Reimer now appeals the ALJ's determination before this Court.

## DISCUSSION

### I. STANDARD OF REVIEW

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

The claimant carries the initial burden of proving a disability in steps one through four of the analysis. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

## II. ANALYSIS

Reimer argues that his case should be remanded to the ALJ for reconsideration based on several errors. First, he argues that his severe medical conditions should have been found to meet listing 12.05(c) at step three of the analysis. Second, he argues that various opinion and other evidence should have been weighed differently in determining his RFC and his ability to work at step five. Those allegations are considered in turn.

### A. Step Three and Listing 12.05(c)

First, Reimer argues that the ALJ's determination that Reimer did not meet or equal Listing 12.05(c) is not supported by substantial evidence. In order to meet Listing 12.05(c) the claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpart P, app. 1, 12.05(C). Reimer argues that the record demonstrates that he met both the IQ requirement and has the required additional impairment.

Reimer's most recent IQ result is 71, which he admits is not within the listing range of 60 through 70. The only evidence of an IQ score within the listing range is a summary of other results created over a decade ago by Dr. Earnest Harman. (R. at 534–37.) Under "Social History," Dr. Harman begins by stating that "this area is quite sketchy and I have to obtain most of it from some very sketchy records." (R. at 535.) He then notes that "there are various IQ scores listed . . . from a low of 67 to a high of 71." (*Id.*)

In the beginning of the SSA listing covering Mental Disorders, it describes how documentation of intelligence tests will be considered. 20 C.F.R. pt. 404, subpart P, app. 1, 12.00(D)(6). It provides that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." *Id.* at 12.00(D)(6)(a). It also discusses how different IQ test use different scales and have different results that must sometimes be converted in order to be used under listing 12.05. *Id.* at 12.00(D)(6)(c).

Here, the only IQ scores that fall within the range are an unknown number of tests that are summarized second hand from "sketchy" records. It is unknown what scale was used on these tests, who performed them, or when they were done. There is no mention of accompanying reports that state whether the results are consistent with Reimer's history or limitations.

It is the claimant's burden to establish disability under the first four steps and Reimer failed to introduce any qualifying IQ tests results into the record. Even if those records had been introduced, Reimer has not shown why the ALJ would be required to credit those results from over a decade ago as opposed to the current results from after the time of alleged disability onset. The listings require consideration of the lowest score within the set of reported scores from one test, but do not require the same for multiple test administrations. *Id.*

The ALJ's decision regarding Listing 12.05(C) is supported by substantial evidence from the record as a whole. Reimer's claim to meet that listing fails at the first prong and this Court need not consider whether he had the additional impairment also required.

**B.    Step Five, the RFC, and Weighing of Opinion and Other Evidence**

Reimer argues that various opinions and other evidence support a more restrictive RFC and a finding at step five that there are not significant numbers of jobs he can perform in the national economy.

**1.    Vocational Rehabilitation Opinions**

Reimer argues that the ALJ should have given greater consideration to the fact that despite over nine years of efforts by public and private vocational rehabilitation agencies, he was still not "employable." He argues that the workers opinions should have been treated as "nonacceptable" medical sources.

First, it is not clear why the opinions of people helping Reimer to search for and apply to jobs should be considered medical in nature. More importantly, whether they are considered "nonacceptable medical source" or other opinion testimony, the ALJ is not

required to accept their opinions concerning Remier's employment prospects as binding. *See* 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Those determinations are reserved for the SSA and the opinions of vocational rehabilitation workers do not determine this outcome. The ALJ is obliged to consider them, which Reimer acknowledges that the ALJ did here. Although the record contains some statements that question Remier's ability to obtain and maintain various jobs, it also shows that the agencies did place him in jobs. It also records that in the efforts to find work, Reimer was not always compliant with instructions and he sometimes missed his appointments and other obligations. The records also indicate other non-disability related obstacles to employment including the scarcity of work because of the economy and Remier's troubles with transportation.

Reimer argues that the records from the vocational agencies should have weighed for him rather than against him. However, the Court defers to the ALJ's determination when the evidence is subject to more than one rational interpretation. *See Batson*, 359 F.3d at 1198. The records from the vocational rehabilitation service support the outcome in this case and this Court will not substitute its judgment even if they might be read another way to support the opposite conclusion. *See Matney*, 981 F.2d at 1019.

### 2. Medical Opinions

Some of the records from the vocation rehabilitation agencies were made by medical sources. For example, the State of Arizona's Vocational Rehabilitation Department referred Reimer for an assessment by Dr. Horan, who was an examining but not a treating psychiatrist. The SSA also had a psychologist, Dr. Delong, examine Reimer, but not treat him. Reimer argues that the opinions of Dr. Horan and Dr. Delong should have been given greater weight. Reimer also argues that the opinion of his treating therapist, Ms. O'Malley, should have been given greater weight by the ALJ.

The regulations impose a hierarchy for medical opinions offered by licensed physicians. The opinion of a treating physician is given more weight than non-treating

and non-examining medical sources. *See* 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

> In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. However, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Physician's assistants are defined as "other sources," § 404.1513(d), and are not entitled to the same deference, *see* § 404.1527; SSR 06–03p. The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'"

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

Here, the psychiatrist and psychologist were not treating physicians. The ALJ provided specific, legitimate reasons based on substantial evidence for discounting their opinions. The ALJ cited other records and the opinions of other medical professionals. Although the ALJ did not specifically state the level of weight assigned to Dr. Horan's report, the ALJ clearly described the findings and contrasted other medical records with different findings. (R. at 18–19.) This demonstrates the level of weight given even if it does not state it and any error in failing to state the level is harmless. This does not show that the ALJ failed to evaluate this medical opinion or to consider the proper factors in weighing it. The ALJ did assign a not significant weight to the opinion of Dr. Delong and gave adequate reasons which are equally applicable to Dr. Horan. (R. at 20–21.)

Ms. O'Malley, as a physician's assistant, was an "other source." Contrary to Reimer's argument, non-acceptable medical sources are classified separately and treated differently. Although in some circumstances they can be given weight as great as other sources, that is neither the required nor the presumed outcome. The ALJ gave germane reasons for discounting her testimony, even if Reimer does not agree with the adjectives that the ALJ used to describe Ms. O'Malley's opinion.

The ALJ noted in several places that Reimer was not taking his medication and had a history of noncompliance with treatment. (*See, e.g.*, R. at 17, 20.) Reimer argues that the ALJ should have recognized that the noncompliance was not willful or extreme

and that it was caused in part by memory problems and a lack of insurance. Reimer is essential arguing that the noncompliance should have been given little weight. In the decision, the ALJ did give it little weight and emphasized that it was not the primary basis for his finding that Reimer was not disabled. (R. at 17, 19.) There is no error in mentioning this consideration which Reimer acknowledges is supported by the record.

In general, Reimer argues that the ALJ should have weighed the records and opinions of these various medical professionals differently. However, the Court defers to the ALJ's determination when the evidence is subject to more than one rational interpretation. *See Batson*, 359 F.3d at 1198. The records and opinions support the outcome in this case and this Court will not substitute its judgment even if they might be read another way to support the opposite conclusion. *See Matney*, 981 F.2d at 1019. The ALJ's consideration of the medical record and opinion evidence was neither based on legal error nor unsupported by substantial evidence.

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action and enter judgment accordingly.

Dated this 29th day of September, 2014.

*A. Murray Snow*

G. Murray Snow
United States District Judge